**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Edward D. Jones & Co., L.P., | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO. 18-cv-6428** |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| Michael Eisenbraun, and | ) | |
| Debra Feaser | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

COMES NOW Edward D. Jones & Co., L.P. d/b/a Edward Jones ("Edward Jones"), by and through its undersigned counsel, and for its Complaint and Application for Temporary Restraining Order and Injunctive Relief against Defendants Michael Eisenbraun and Debra Feaser, states as follows:

**PRELIMINARY STATEMENT**

1.      This action is for a temporary restraining order and a preliminary injunction to maintain the status quo pending resolution of arbitration proceedings between Edward Jones and Defendants Michael Eisenbraun ("Defendant Eisenbraun") and Debra Feaser ("Defendant Feaser")[1].

2.      Defendants were employed by Edward Jones. This dispute arises out of Defendants' departure from Edward Jones on November 2, 2018.

---

[1] Edward Jones and Defendants have agreed to submit the matters addressed in this Complaint to arbitration according to the rules of the Financial Industry Regulatory Authority ("FINRA"). Arbitration proceedings are being filed concurrently with FINRA Dispute Resolution. Edward Jones and Defendants, however, have also expressly agreed that Edward Jones has the right to seek injunctive relief before a court of competent jurisdiction pending the outcome of arbitration. Express language governing these rights is set forth herein.

1

3.     While still employed by Edward Jones, Defendants secretly, and in violation of their legal, equitable and contractual obligations to Edward Jones – actively and deceptively printed, copied, and/or removed Edward Jones' customer files, confidential records, and/or trade secrets and took them after their employment ended.

4.     In violation of their contractual and legal duties, Defendants have, after resigning from Edward Jones and joining Ameriprise Financial Services, Inc. ("Ameriprise") improperly solicited numerous customers of Edward Jones.

5.     Defendants' conduct violates the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 and New York state law.

6.     Defendants' conduct constitutes breaches of Defendant's Feaser's Investment Representative Employment Agreement and Defendant Eisenbraun's Financial Advisor Employment Agreement (collectively "the Agreements") with Edward Jones, which Defendant Feaser signed on July 15, 2003, and Defendant Eisenbraun signed on February 29, 2016, as well as Edward Jones' Trade Secrets Policy, which they both accepted and agreed to abide by twice per year during their employment with Edward Jones. Their conduct also violates other applicable laws.[2]

7.     To prevent continued irreparable harm arising from Defendants' course of conduct as individuals associated with Ameriprise, Edward Jones seeks immediate injunctive relief (in the form of a temporary restraining order and preliminary injunction) barring Defendants and any entity acting in concert with them from soliciting Edward Jones' customers and barring Defendants and any entity acting in concert with them from possessing and/or further using Edward Jones' confidential, trade secret, and proprietary business and customer

_____

[2] Several years ago, Edward Jones changed the title from Investment Representative to Financial Advisor. There was no change in job duties, compensation, or any other duties or obligations.

information, pending resolution of Edward Jones' claims against Defendants in related arbitration.

## PARTIES

8.      Edward Jones is a limited partnership and a registered broker/dealer that operates more than 14,000 branch offices across the United States, including offices in and around Staten Island, New York. *See* Affidavit of Melanie L. Boehne, attached hereto as **Exhibit A**, at ¶ 3.

9.      Upon information and belief, Defendants are currently residents of New York. Prior to November 2, 2018, Defendants were employed as Financial Advisors with Edward Jones in an office located at 1150 South Avenue Suite 305, Staten Island, New York 10314. Defendants now work for Ameriprise at an office located at 900 South Avenue Suite 202, Staten Island, New York. Ameriprise is a registered broker/dealer and direct competitor of Edward Jones. *Id.* at ¶¶ 5, 6.

## JURISDICTION AND VENUE

10.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the claims at issue are governed by the laws of the United States, specifically the federal DTSA.

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over other claims brought by Edward Jones because they form part of the same case or controversy as the claims over which this Court has original subject matter jurisdiction.

12.     Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims contained in this Complaint occurred within the Eastern District of New York.

13.     Venue is also proper in this Court by virtue of 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendants with respect to the claims contained in this Complaint.

## FACTUAL ALLEGATIONS

14.     Edward Jones offers a wide variety of investment brokerage and financial advisory services.  Edward Jones specializes in operating one-person branch offices in smaller- and medium-sized markets, including Staten Island, New York that have not traditionally been serviced by the larger investment firms.  The successful operation of Edward Jones' offices in these markets, dealing almost exclusively with individual investors, is the result of many years of effort, research, promotion, advertising, time, expense, marketing and good will expended by Edward Jones. **Exhibit A**, at ¶ 3.

15.     Defendant Feaser worked as a Financial Advisor at Edward Jones in its Staten Island, New York office from July, 2003 until November 2, 2018.

16.     Defendant Eisenbraun worked as a Financial Advisor at Edward Jones in its State Island, New York office from November, 2016 until November 2, 2018.

17.     Throughout their employment, Defendants received constant supervision, assistance, and support from Edward Jones. They were visited and contacted by employees of Edward Jones to provide them with training and assistance. In addition, Defendants were able to and did, in fact, contact the Edward Jones headquarters to utilize the comprehensive services available there to assist them in operating and growing their office and increasing their ability to become successful Financial Advisors. *Id.* at ¶ 7.

18.     Defendant Feaser and Defendant Eisenbraun both executed their Agreements in connection with accepting employment at Edward Jones. *See* **Exhibit 1** and **Exhibit 2** to **Exhibit A**; *see also* ¶¶ 39-62 below.

19.     Edward Jones has, when necessary, enforced its Financial Advisor Employment Agreement against former employees who have breached its terms.

20.     In addition to the aforementioned Agreements, Edward Jones does not stop its efforts at ensuring the confidentiality of client information at requiring Financial Advisors to execute their Agreements. Each Financial Advisor, including Defendants, are provided the Edward Jones Compliance Manual (the "Manual"). A true and correct copy of relevant portions of the Manual are attached as **Exhibit 3** to **Exhibit A.**

21.     Each and every Financial Advisor is required to read the Manual and be familiar with its contents. *See* **Exhibit A**, at ¶ 19.

22.     The Edward Jones Manual, **Exhibit 3**, states as follows:

The Uniform Trade Secrets Act forms the basis for this policy.

A 'trade secret' is defined by the Uniform Trade Secret Act as: 'information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

- Derives independent economic value, actual or potential, from not being generally known to, and
- Not being readily ascertainable, by proper means, by other persons who can obtain economic value from its disclosure or use, and
- Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'

[Edward Jones] considers as its trade secrets, ('Trade Secrets'), and intends to keep confidential, everything protected under the Uniform Trade Secrets Act, as well as the following:

- Computer programs (whether in the form of source code, assembly language, object code, or any other form,

including software, firmware, and programmable array logic)
- Formulas, algorithms
- Methods, techniques, processes
- Designs, specifications, diagrams, flow charts
- Manuals, descriptions, instructions, explanations, improvements
- All ideas, systems, and methods of operation
- Information concerning or resulting from research and development work performed by Edward Jones
- Information concerning Edward Jones' management, financial condition, financial operation, purchasing activities, sales activities, marketing activities and business plans, or other activities
- Information concerning actual or potential Edward Jones clients, including their identities, contact information, and financial information
- All other types and categories of information for which Edward Jones intends or expects secrecy to be maintained and for which the firm has made reasonable efforts to maintain its secrecy

Trade Secrets include both information learned by Edward Jones partners and associates (collectively 'Associates') during their time working for Edward Jones and information developed by Associates in the course of their work for Edward Jones.

By virtue of employment with Edward Jones . . . one may be entrusted with or have access to Trade Secret information. Under the law, associates are obligated not to disclose or use, except in their work at Edward Jones, any Trade Secret. This obligation exists both during and after one's employment with Edward Jones and for so long as the Trade Secret is not generally known outside Edward Jones.

Associates may also be advised from time to time as to restrictions upon the use or disclosure of specified information that has been licensed or otherwise disclosed to Edward Jones by third parties per license or confidential disclosure agreements. Such agreements may contain restrictions upon the use or disclosure of such information. Associates must abide by the restrictions upon use and disclosure contained in such agreements.

All documents, encoded media and other tangible items provided by Edward Jones or prepared, generated, or created in connection with

6

any business activity of Edward Jones are the property of Edward Jones.

Upon termination of employment with Edward Jones, one must promptly deliver to Edward Jones all such documents, media and other items in one's possession, including all complete or partial copies, recordings, abstracts, notes or reproductions of any kind made from or about such documents, media, items or information contained therein.

Edward Jones has spent and continues to spend significant resources developing and collecting information required to successfully operate its business. This information is entrusted to Associates.

Certain information is to be kept confidential due to its value to Edward Jones. Failure to keep this information confidential can cause significant harm to Edward Jones, including monetary loss. Unauthorized use or misappropriation of Trade Secrets violates Edward Jones policy, and state and federal law.

23.     Edward Jones also requires every Financial Advisor, including Defendants, to acknowledge regularly the trade secret status of customer information. Once every six months each Financial Advisor, including Defendants, must acknowledge the trade secret status of said information or be denied access to said information on the office computer. **Exhibit A**, at ¶ 21; *see also* **Exhibits 4 and 5** to **Exhibit A**.

24.     Edward Jones undertakes other extensive efforts to ensure that confidential client information is secured and not available to the public. The steps include not only requiring Financial Advisors to execute the Agreements described herein and abide by the confidentiality requirements contained in the Manual, but also the implementation of various security systems limiting access to hard-copy and computer data and restricting access to said information to only those who have a need to know and have access to it. **Exhibit A**, at ¶ 22.

25.     Here, Defendants intentionally collected and took Edward Jones' trade secrets and after resignation, utilized such information to solicit Edward Jones' customers and induce them to terminate their relationships with Edward Jones.

26.     Leading up to their termination, Defendants printed various Edward Jones' reports containing lists of clients and other personal and financial information.

27.     On several different occasions, and from multiple different printing stations in the branch office, Defendants printed reports containing lists of clients and other personal and financial client information including, client account statements. *See* Affidavit of Jay Guetterman, attached hereto as **Exhibit B**, at ¶¶ 7-17, reports attached to Mr. Guetterman's Affidavit as **Exhibits 1-4** and sample printed account statement attached to same as **Exhibit 5**.

28.     Additionally, on September 25, 2018, Defendant Feaser printed a list described as "All Clients for Debra." This list contained information concerning 1,080 of Edward Jones' customers. The list that was printed by Defendant Feaser contained customer information including identity, primary phone number, call preference, account number, address and acceleration code. *See* Affidavit of Justin Fox, attached hereto as **Exhibit C**, at ¶ 10; *see also* **Exhibit 1** to **Exhibit C**.

29.      On September 27, 2018, Defendant Eisenbraun also printed a list described as "Clients." This list contained information concerning 66 of Edward Jones' customers. This list that was printed also contained customer information including identity, primary phone number, call preference, account number, address and acceleration code. *See* **Exhibit C**, at ¶ 13; *see also* **Exhibit 2** to **Exhibit C**.

30.     Immediately after Defendants' resignation, Defendant began methodically contacting Edward Jones clients, via telephone, to inform them of their departure from Edward

Jones. *See* **Exhibit A**, ¶ 23; *see also* Affidavit of Financial Advisor C.R. Albrittion, attached hereto as **Exhibit D**, at ¶¶ 6, 8; *see also* Affidavit of Financial Advisor Janey Roff, attached hereto as **Exhibit E**, at ¶ 6; *see also* Affidavit of  Financial Advisor Grant Muir, attached hereto as **Exhibit F**, at ¶¶ 6, 8.

31.     Additionally, on November 7, 2018, a mere five days after Defendants' resignation, all three of the Branch Office Administrators ("BOAs") left the Branch Office. *See* **Exhibit C**, at ¶ 9, **Exhibit E**, at ¶ 7, **Exhibit F**, at ¶ 9.

32.     Upon information and belief, Defendants encouraged and solicited these BOAs into leaving Edward Jones in order to work for them at Ameriprise.

33.     Edward Jones' trade secret client information taken and/or retained by Defendants is confidential and proprietary to Edward Jones and is not readily available to or ascertainable by Defendants, Ameriprise, or other competitors. Such information is valuable to competitors because it can be used to target solicitations of an otherwise unknown group of investors.

34.     When Edward Jones' trade secret, client information is improperly disseminated to third parties, it can result in monetary damages as well as harm to its business reputation and a loss of goodwill.

35.     Defendants' use of Edward Jones' trade secrets and violation of their non-solicitation obligations is causing and will continue to cause irreparable harm to Edward Jones.

36.     Before Defendants' termination, the Edward Jones Staten Island, New York office where they worked managed assets in excess of $150 million. As of November 8, 2018, approximately 5 households, representing 30 accounts, that were formerly serviced by Defendant Feaser and Defendant Eisenbraun at the Branch Office, have transferred investment assets valued at approximately $19,235,254, from Edward Jones to Ameriprise.

37.     The actions of Defendants have damaged the financial viability of the Edward Jones' Staten Island, New York office because they have solicited Edward Jones' clients representing a significant amount of assets, as well as caused noncompensable damages to Edward Jones' business reputation and the goodwill it has developed at great effort and expense over the years.

38.     These actions of Defendants are also in clear violation of the agreements to which each Defendant agreed to abide by when they began their employment with Edward Jones.

**Defendant Feaser's Agreement with Edward Jones**

39.     Defendant Feaser executed her Agreement on July 15, 2003. *Id*. at ¶ 8; *see* Feaser Agreement, **Exhibit 1** to **Exhibit A**.

40.     In signing the Agreement, Defendant Feaser acknowledged and agreed that her employment would put her in contact with confidential, proprietary, and trade secret information of Edward Jones, including but not limited to the names and contact information of Edward Jones' customers and the services provided to them. Defendant Feaser agreed that she would protect this confidential trade secret information, that she would use it exclusively in relation to her employment with Edward Jones, and that she would return it to Edward Jones upon termination of her employment. *See* **Exhibit 1 to Exhibit A**, at ¶¶ 4, 11.

41.     Customer information including names, addresses, investment holdings and other financial information are confidential trade secrets and the exclusive property of Edward Jones. *Id.*

42.     Customers consider their financial information to be confidential and expect Edward Jones to take any and all reasonable steps to ensure their confidentiality. *Id.*

43.     Paragraph 14 of the Feaser Agreement, **Exhibit 1** to **Exhibit A**, states as follows:

You agree that all records of Edward jones, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained in those records, whether generated by Edward Jones or you, including the names, addresses and telephone numbers of any account and/or customer are confidential, proprietary to Edward Jones and constitute trade secrets of Edward Jones ("Edward Jones Trade Secrets"). Edward Jones Trade Secrets are and shall remain the sole and exclusive property of Edward Jones at all times during your employment with Edward Jones and after the termination of your employment. You shall at no time, while this Agreement is in effect or thereafter, use any Edward Jones Trade Secrets acquired by you during the period of this Agreement in a manner adverse to the interest of Edward Jones…. It shall constitute a violation of this Agreement for you to provide customer information to other than Edward Jones employees who have need to access said information for the purpose of providing investments and services to customers of Edward Jones.

These Edward Jones Trade Secrets, whether provided to you by Edward Jones or by any customer of Edward Jones, are entrusted to you as an employee and representative of Edward Jones. These Edward Jones Trade Secrets are unique, extremely valuable to Edward Jones, and are developed and acquired by great expenditures of time, effort, and cost. You agree that all of said Edward Jones Trade Secrets or any part of them are the sole proprietary information of Edward Jones and shall be treated by you at all times as confidential information of Edward Jones. You further agree that the (a) identity and particular needs of Edward Jones' customers have actual or potential independent economic value because of such information is not generally known and is not readily ascertainable by proper means by competitors of Edward Jones or others in the industry; (b) Edward Jones has a proprietary interest in the identity of its customers and all other information about its customers; and (c) documents and information regarding Edward Jones' processes, methods, plans, data, customers and operations, are highly confidential and are protected from disclosure as Trade Secrets or otherwise proprietary and confidential information. You will not use these Edward Jones Trade Secrets or remove any records containing such Edward Jones Trade Secrets from any Edward Jones premises except for the purpose of conducting business on behalf of Edward Jones. You further agree not to divulge or disclose these Edward Jones

Trade Secrets to any third-party, either during your employment or at any time thereafter….

You acknowledge and agree that Edward Jones will suffer great loss and damage if, during your employment or at any time subsequent to such employment, you were to improperly use or disclose Edward Jones Trade Secrets or if you were to use your contacts and relationships with any customers of Edward Jones. Therefore, you agree that you must comply with the restrictive covenants of this Agreement. It is understood at the execution of this Agreement and you acknowledge and agree that such restrictions protect legitimate protectable interests of Edward Jones with respect to its trade secrets and customers' information, that the restrictions are reasonable and necessary to protect such interests, and that such restrictions do not impair or prevent you from earning a living or from working in other areas of the securities industry (e.g., effectuating sales to non-restricted customers).

44.     Paragraph 4 of the Agreement, states as follows:

You shall keep and preserve all furniture, equipment, signs, account records, customer statements and files, manuals, forms, supplies and literature and shall deliver such property to Edward Jones, if requested, during the course of your employment.  In the event your employment with Edward Jones ends either through termination by Edward Jones or through resignation by you, will surrender to Edward Jones all of the above such property which shall be and remain the property of Edward Jones.

45.     Additionally, in signing the Agreement, Defendant Feaser agreed not to solicit

Edward Jones' clients following termination of her employment.

46.     Specifically, Paragraph 10 of the Agreement states as follows:

You shall at no time, while this Agreement is in effect or thereafter:  (i) attempt to induce any person to terminate an agreement or relationship with Edward Jones without Edward Jones' consent; (ii) attempt to cause any holder of a certificate, stock, or other security to cease his or her performance under the terms of a contract with Edward Jones; or (iii) solicit or recommend the makings of unwarranted claims against Edward Jones.

47.     Paragraph 11 of the Agreement further states as follows:

> [Y]ou agree for a period of one year following the termination of your employment, that you will not solicit by mail, phone, electronic communication, personal meeting, or any other means, either directly or indirectly, provided that the foregoing provision shall hot apply to customers with whom you did business before you became an employee of Edward Jones. Your agreement not to solicit means that you will not, during your employment in any capacity, and for a period of one year thereafter; initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Edward Jones customer, to transfer from Edward Jones to you or to your new employer, to open a new account with you or with your new employer, or to otherwise discontinue its patronage and business relationship with Edward Jones.  You further agree that, while in the employ of Edward Jones and for a period of one year after termination of employment with Edward Jones, you will neither confer nor discuss with any Edward Jones employee the subject of leaving the employ of Edward Jones, nor shall you confer or discuss with any Edward Jones employee the subject of employment by a person or organization engaged in a similar, related or competing line or lines of business.

48.     Defendant Feaser acknowledged and agreed that a breach of her obligations regarding confidential trade secrets and/or her obligations regarding non-solicitation would cause irreparable harm to Edward Jones. She also agreed that Edward Jones would be entitled to injunctive relief related to any such breach as well as the recovery of related attorneys' fees.

49.     Paragraph 12 of the Agreement states as follows:

> In addition to, and not in lieu of, all other rights and remedies available to Edward Jones, Edward Jones shall be automatically entitled to a temporary restraining order and a temporary or preliminary injunction and to obtain all other available equitable remedies including a permanent injunction in order to restrain and enjoin any breach or violation of this Agreement by you.
>
> You acknowledge that the separate and distinct promises in this Agreement are reasonable and necessary in order to protect Edward Jones' legitimate business interests, that any violation would result in irreparable injury to Edward Jones, and that the enforcement of  a remedy by way of injunction or otherwise would

13

not prevent you from earning a living. If Edward Jones incurs expenses to retain attorneys to enforce this Agreement and/or seek redress for any violation, you promise and agree to pay all costs, court costs, fees and expenses, including actual attorneys fees, incurred by Edward Jones to enforce this Agreement and/or recover and collect damages for any violation, whether or not litigation is commenced.

## Defendant Eisenbraun's Agreement with Edward Jones

50. Defendant Eisenbraun executed his Agreement on February 29, 2016. *See* **Exhibit A** at ¶ 13; *see* Eisenbraun Agreement, attached as **Exhibit 2** to **Exhibit A**.

51. In signing the Agreement, Defendant Eisenbraun acknowledged and agreed that his employment would put him in contact with confidential, proprietary, and trade secret information of Edward Jones, including but not limited to the names and contact information of Edward Jones' clients and the services provided to them. Defendant agreed that he would protect this confidential trade secret information, that he would use it exclusively in relation to his employment with Edward Jones, and that he would return it to Edward Jones upon termination of his employment.

52. Client information including names, addresses, investment holdings and other financial information are confidential trade secrets and the exclusive property of Edward Jones.

53. Clients consider their financial information to be confidential and expect Edward Jones to take any and all reasonable steps to ensure their confidentiality.

54. Paragraph 13 of the Agreement, **Exhibit 2** to **Exhibit A**, states as follows:

You agree that all records of Edward Jones, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained in those records, whether generated by Edward Jones or you including, but not limited to Edward Jones' processes, methods, plans, data, operations and the identities, names, addresses and telephone numbers of any account and/or client are confidential, proprietary to Edward Jones and constitute trade secrets of Edward Jones ("Edward Jones Trade

Secrets"). Edward Jones Trade Secrets are and shall remain the sole and exclusive property of Edward Jones at all times during your employment with Edward Jones and after the termination of your employment. You shall at no time, while this Agreement is in effect or thereafter, use any Edward Jones Trade Secrets acquired by you during the period of this Agreement in a manner adverse to the interest of Edward Jones . . . It shall constitute a violation of this Agreement for you to provide client information to other than Edward Jones employees who have need to access said information for the purpose of providing investments and services to clients of Edward Jones . . .  It shall constitute a breach of this Agreement for you to provide client information to anyone without the express written permission of Edward Jones including, but not limited to, prospective or future employers, for any purpose whatsoever . . . These Edward Jones Trade Secrets, whether provided to you by Edward Jones or by any clients of Edward Jones, are entrusted to you as an employee and representative of Edward Jones. These Edward Jones Trade Secrets are unique, extremely valuable to Edward Jones, and are developed and acquired by great expenditures of time, effort, and cost.  You agree that all of said Edward Jones Trade Secrets or any part of them are the sole proprietary information of Edward Jones and shall be treated by you at all times as confidential information of Edward Jones. You further agree that (a) the identity and particular needs of Edward Jones' clients have actual or potential independent economic value because such information is not generally known and is not readily ascertainable by proper means by competitors of Edward Jones or others in the industry; (b) Edward Jones has a proprietary interest in the identity of its clients and all other information about its clients; and (c) documents and information regarding Edward Jones' processes, methods, plans, data, operations, and the identities, names, addresses and telephone numbers of any account and/or client are highly confidential and are protected from disclosure as Trade Secrets or otherwise proprietary and confidential information.  You will not use these Edward Jones Trade Secrets or remove any records or duplicates of records containing Edward Jones Trade Secrets from any Edward Jones premises except for the purpose of conducting business on behalf of Edward Jones. You further agree not to divulge or disclose these Edward Jones Trade Secrets to any third-party, either during your employment or at any time thereafter . . . In the event of the termination of your employment with Edward Jones, for any reason whatsoever, you agree to return any original records and any copies whatsoever of documents or any computerized records containing Edward Jones Trade Secrets or any confidential and proprietary information which have been removed from

Edward Jones . . . You agree that Trade Secrets of Edward Jones include all data on [any laptop computer provided by Edward Jones] including the hard drive, zip drive and software, including programs. Client information and Edward Jones Trade Secrets, as defined [herein] remain the exclusive property of Edward Jones whether retained on computer disk, transferred to another computer or storage device or converted to any other format, including paper copies . . . You acknowledge and agree that Edward Jones will suffer great loss and damage if, during your employment with Edward Jones or at any time thereafter, you were to improperly use or disclose Edward Jones Trade Secrets or confidential and proprietary information . . . Therefore, you agree that you must comply with the restrictive covenants of this Agreement. It is understood at the execution of this Agreement, and you acknowledge and agree, that such restrictions protect legitimate protectable interests of Edward Jones with respect to Edward Jones Trade Secrets and that the restrictions are reasonable and necessary to protect such interests, and that such restrictions do not impair or prevent you from earning a living or from working in other areas of the securities industry (e.g., effectuating sales to non-restricted customers).

55.     Paragraph 4 of the Agreement, states as follows:

You shall keep and preserve all property of Edward Jones and shall deliver such property to Edward Jones, if requested, during the course of your employment. In the event your employment with Edward Jones ends either through termination by Edward Jones or by your resignation, you will surrender to Edward Jones all of said property which shall remain the property of Edward Jones.

56.     Additionally, in signing the Agreement, Defendant Eisenbraun agreed not to solicit Edward Jones' clients following termination of his employment.

57.     Specifically, Paragraph 12 of the Agreement states as follows:

You shall at no time while this Agreement is in effect or thereafter: (1) attempt to induce any person to terminate an agreement or relationship with Edward Jones without Edward Jones' written consent; (ii) attempt to cause any holder of a certificate, stock, or other security to cease his/her performance under the terms of a contract with Edward Jones; or (iii) solicit or recommend the making of unwarranted claims against Edward Jones.

58.     Paragraph 13 of the Agreement further states as follows:

Furthermore, you agree for a period of one year following the termination of your employment, that you will not solicit by mail, phone, electronic communication, personal meeting, or any other means, either directly or indirectly, any clients of Edward Jones with whom you had direct contact during your employment with Edward Jones or about whom you have information or knowledge of confidential information or Edward Jones Trade Secrets, provided that the foregoing provision shall not apply to clients with whom you did securities and/or insurance business before you became an employee of Edward Jones. Your agreement not to solicit means that you shall not, during your employment with Edward Jones, and for a period of one year thereafter, contact or communicate with, regardless of who initiates said contact or communication, any Edward Jones client for the purpose of inviting, encouraging or requesting any Edward Jones client to transfer from Edward Jones to you or to your new employer/independent broker-dealer, to open a new account with you or with your new employer or to otherwise discontinue his/her/its patronage and business relationship with Edward Jones . . . You acknowledge and agree that Edward Jones will suffer great loss and damage if, during your employment with Edward Jones or at any time thereafter, you were to improperly use or disclose Edward Jones Trade Secrets or confidential and proprietary information or if you were to use your contacts and relationships with any customers of Edward Jones. Therefore, you agree that you must comply with the restrictive covenants of this Agreement. It is understood at the execution of this Agreement, and you acknowledge and agree, that such restrictions protect legitimate protectable interests of Edward Jones with respect to Edward Jones Trade Secrets and that the restrictions are reasonable and necessary to protect such interests, and that such restrictions do not impair or prevent you from earning a living or from working in other areas of the securities industry (e.g., effectuating sales to non-restricted customers).

59.     Defendant acknowledged and agreed that a breach of his obligations regarding confidential trade secrets and/or his obligations regarding non-solicitation would cause irreparable harm to Edward Jones. He also agreed that Edward Jones would be entitled to injunctive relief related to any such breach as well as the recovery of related attorneys' fees.

60.     Paragraph 14 of the Agreement states as follows:

In addition to and not in lieu of, all other rights and remedies available to Edward Jones, Edward Jones shall be automatically entitled to a temporary restraining order and a temporary or preliminary injunction and to obtain all other available equitable remedies including a permanent injunction in order to restrain and enjoin any breach or violation of this Agreement by you. The exercise of Edward Jones' right to obtain injunctive relief for any actual or threatened damage or injury caused by you shall not prejudice its right to seek and obtain damages . . . Edward Jones and you agree that Edward Jones would suffer substantial, immediate and irreparable harm to its patronage and good will; that it would suffer the loss of its clients and accounts (which cannot be adequately remedied by damages); that any remedy in arbitration would be a nullity unless temporary and preliminary relief preserving Edward Jones' rights hereunder pending such arbitration is granted; and that Edward Jones shall therefore be automatically entitled to (and may proceed to secure) a temporary restraining order and temporary or preliminary injunction and other appropriate relief in any state or federal court in order to preserve the status quo that existed prior to any alleged breach of this Agreement pending the outcome of such arbitration. This right of Edward Jones to injunctive relief shall be in addition to any other remedies available to Edward Jones for any breach or any violation hereof.

61.     Paragraph 15 of the Agreement states as follows:

You acknowledge that the separate and distinct promises in this Agreement are reasonable and necessary in order to protect Edward Jones' legitimate business interests, that any violation would result in irreparable injury to Edward Jones, and that the enforcement of a remedy by way of injunction or otherwise would not prevent you from earning a living. If Edward Jones incurs expenses to retain attorneys to enforce this Agreement and/or seek redress for any violation, you promise and agree to pay all costs, court costs, fees and expenses, including actual attorneys' fees, incurred by Edward Jones to enforce this Agreement and/or recover and collect damages for any violation, whether or not litigation is commenced.

62.     Paragraph 17 of the Agreement states as follows:

[Arbitration regarding this agreement] shall in no way affect or impair Edward Jones' rights under any other provision of this

18

Agreement to obtain equitable relief from a court of competent jurisdiction, which relief may remain in full force and effect pending the outcome of arbitration proceedings.

## COUNT I
## Breach of Contract

63. Edward Jones repeats and realleges Paragraphs 1 through and including 62 as if fully set forth herein.

64. Edward Jones has fully performed its obligations under both Agreements executed, respectively, by Defendants.

65. Defendants have violated their obligations under the Agreements and the other contractual promises they made to Edward Jones by, among other things, taking Edward Jones' customer information, providing Edward Jones' customer information to Ameriprise, and soliciting Edward Jones' customers within one year of their separation from Edward Jones.

66. Defendants' breaches of their agreements have directly and proximately caused irreparable harm to Edward Jones, which lacks an adequate remedy at law.

67. As a direct and proximate result of Defendants' breaches of their agreements, Edward Jones has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.

68. Accordingly, Edward Jones is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees, in an amount to be determined at trial.

69. Edward Jones also seeks an order compelling Defendants to return any and all Edward Jones documents and/or other compilations prepared by Defendants, either from documents they removed from Edward Jones or from memory, which contain Edward Jones' business and customer information.

## COUNT II
## Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836

70.     Edward Jones repeats and realleges Paragraphs 1 through and including 69 as if fully set forth herein.

71.     Edward Jones' trade secrets and confidential and proprietary business and customer information derives substantial, independent economic value from not being generally known to the public or to its competitors, who could obtain economic value from the information. Edward Jones has expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.

72.     Edward Jones has taken reasonable steps under the circumstances to safeguard the confidentiality and secrecy of its trade secrets and confidential information.

73.     Among other things, Edward Jones has required its employees to sign agreements and conform to policies that include confidentiality provisions. It has instructed its employees not to disclose internal information to third parties. It has taken security measures and other measures to protect its trade secrets and confidential information in electronic and hard-copy formats.

74.     Defendants agreed to and acknowledged contracts and policies that include confidentiality and non-disclosure provisions.

75.     Edward Jones' trade secrets and confidential information are valuable and important to the operation of its business.

76.     Edward Jones' trade secrets and confidential information are not known to competitors, and are not readily ascertainable through proper means by competitors. Competitors could profit from the use or disclosure thereof.

77.     Edward Jones is informed and believes that Defendants have used Edward Jones' trade secrets and confidential information for their benefit without Edward Jones' consent.

78.     Defendants' conduct constitutes misappropriation and misuse of Edward Jones' confidential, proprietary, and trade secret information.

79.     If Defendants are permitted to unfairly compete with Edward Jones as described herein, they will continue to use the Edward Jones' trade secrets and confidential information to their advantage, and/or the advantage of Ameriprise and to the detriment of Edward Jones.

80.     Upon information and belief, Defendants' acts and conduct were willful and malicious, and in conscious or reckless disregard of the rights of Edward Jones.

81.     By reason of Defendants' violations of the federal DTSA and related law, Edward Jones faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

82.     As a direct and proximate result of Defendants' violations of the federal DTSA and related law, Edward Jones has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Edward Jones is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees.

## COUNT III
### Misappropriation of Trade Secrets under New York Law

83.     Edward Jones repeats and realleges Paragraphs 1 through and including 82 as if fully set forth herein.

84.     Edward Jones' trade secrets and confidential and proprietary business and customer information derives substantial, independent economic value from not being generally known to the public or to its competitors, who could obtain economic value from the

21

information. Edward Jones has expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.

85.     Edward Jones has taken reasonable steps under the circumstances to safeguard the confidentiality and secrecy of its trade secrets and confidential information.

86.     Among other things, Edward Jones has required its employees to sign agreements and conform to policies that include confidentiality provisions. It has instructed its employees to not disclose internal information to third parties. It has taken security measures and other measures to protect its trade secrets and confidential information in electronic and hard-copy formats.

87.     Defendants agreed to and acknowledged contracts and policies that include confidentiality and non-disclosure provisions.

88.     Edward Jones' trade secrets and confidential information are valuable and important to the operation of its business.

89.     Edward Jones' trade secrets and confidential information are not known to competitors, nor readily ascertainable through proper means by competitors. Competitors could profit from the use or disclosure thereof.

90.     Defendants have used Edward Jones' trade secrets and confidential information for their benefit without Edward Jones' consent.

91.     Defendants' conduct constitutes a misappropriation and misuse of Edward Jones' confidential, proprietary, and trade secret information.

92.     If Defendants are permitted to unfairly compete with Edward Jones as described herein, they will continue to use the Edward Jones' trade secrets and confidential information to their advantage, and/or the advantage of Ameriprise and to the detriment of Edward Jones.

93.     Upon information and belief, Defendants' acts and conduct were willful and malicious, and in conscious or reckless disregard of the rights of Edward Jones.

94.     By reason of Defendants' violations of New York state law, Edward Jones faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law. *See BDO Seidman v. Hirshberg*, 712 N.E.2d 1220 (1999)*; TBA Glob., LLC v. Proscenium Events, LLC*, 980 N.Y.S.2d 459 (N.Y. App. Div. 2014)

95.     As a direct and proximate result of Defendant's violations of New York state law and related statutes, Edward Jones has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Edward Jones is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees.

## COUNT IV
### Tortious Interference with Business Relations

96.     Edward Jones repeats and realleges Paragraphs 1 through and including 95 as if fully set forth herein.

97.     There existed and continues to exist business relations between Edward Jones and its customers. Edward Jones has developed and maintains these advantageous actual business relationships with its customers that promise a continuing probability of future economic benefit to Edward Jones.

98.     Defendants were aware of the business relations that Edward Jones had with its customers.

99.     Defendants have already and, upon information and belief, will continue to intentionally interfere with the business relations that Edward Jones has with its customers.

100.    Defendants have and upon information and belief, will continue to so interfere using their knowledge of Edward Jones' business relations and contacts and other confidential trade secret information, which Defendants acquired as a direct result of their employment with Edward Jones.

101.    Defendants have intentionally interfered with Edward Jones' legitimate future business expectations.

102.    Defendants' actions are not privileged.

103.    Defendants' actions have damaged and will continue to damage Edward Jones.

104.    By reason of Defendants' tortious interference with existing business relationships, Edward Jones faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

105.    As a direct and proximate result of Defendants' tortious interference with existing business relationships, Edward Jones has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Edward Jones is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees, in an amount to be determined at trial.

## COUNT V
## Unfair Competition

106.    Edward Jones repeats and realleges Paragraphs 1 through and including 105 as if fully set forth herein.

107.    Defendants' conduct as set forth above and incorporated herein is unlawful, fraudulent, deceptive, and constitutes unfair competition.

108.    By reason of Defendants' unfair competition, Edward Jones faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

24

109.    As a direct and proximate result of Defendants' unfair competition, Edward Jones has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Edward Jones is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees, in an amount to be determined at trial.

**COUNT VI**
**Conversion**

110.    Edward Jones repeats and realleges Paragraphs 1 through and including 109 as if fully set forth herein.

111.    Edward Jones was, and still is, entitled to the immediate and exclusive possession of its trade secrets and confidential information, and all physical embodiments thereof.

112.    Without authorization, Defendants, by their conduct alleged herein, took Edward Jones' trade secret and confidential information, including but not limited to lists of confidential customer information, and converted them for their own use.

113.    By reason of Defendants' conversion, Edward Jones faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

114.    As a direct and proximate result of Defendants' conversion, Edward Jones has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Edward Jones is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees, in an amount to be determined at trial.

## COUNT VII
### Injunctive Relief

115.     Edward Jones repeats and realleges Paragraphs 1 through and including 114 as if fully set forth herein

116.     Defendant's actions entitle Edward Jones to injunctive relief pursuant to the federal DTSA, New York state law, the Agreements and equitable principles prohibiting Defendants from competing with Edward Jones as described herein, and/or the provisions of the contracts between Defendants and Edward Jones.

WHEREFORE, Edward Jones respectfully requests that a judgment be entered in its favor against Defendant as follows:

A.     In support of all claims for relief, a temporary and preliminary injunction lasting until such time as FINRA Dispute Resolution renders an award in the underlying dispute, enjoining and restraining Defendants, directly or indirectly, and whether alone or in concert with others, from:

  i.    soliciting, attempting to solicit, inducing to leave, or attempting to induce to leave any Edward Jones customer that was serviced by Defendants while they were at Edward Jones or with respect to whom Defendants were privy to trade secret or confidential information; and

  ii.   using, disclosing, or transmitting for any purpose Edward Jones' documents, materials, trade secrets, and/or confidential or proprietary information pertaining to Edward Jones, its employees, its operations, and/or its clients.

B.     Ordering Defendants, and all those acting in concert with them, to return to Edward Jones or its counsel all records, documents, and/or information in whatever form (whether original, copied, computerized or handwritten), pertaining to Edward Jones, its trade secrets, its confidential or proprietary information, its employees, its operations, and/or its clients, within 24 hours of notice to Defendants or their counsel of the terms of such an order.

C.      Damages to be determined at trial.

D.      Exemplary damages pursuant to the Defend Trade Secrets Act and New York state law.

E.      Costs.

F.      Attorneys' fees pursuant to the Defend Trade Secrets Act, New York state law, and the Feaser Agreement, as a result of Defendants' willful and malicious misappropriation, and pursuant to Defendants' contracts with Edward Jones.

G.      Such other and further relief as the Court deems just and proper.


Dated: November 12, 2018


                              Respectfully submitted,


                              **HARRIS BEACH PLLC**
                              *Attorneys for Plaintiff*
                              *Edward D. Jones & Co., L.P.*


                    By:_____/S/ Darius P. Chafizadeh
                         Darius P. Chafizadeh
                         Mathew T. Dudley

                         445 Hamilton Avenue, Suite 1206
                         White Plains, New York 10601
                         P: (914) 683-1200
                         F: (914) 683-1210
                         dchafizadeh@harrisbeach.com
                         mdudley@harrisbeach.com